UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROMOND WATSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JO ANNE B. BARNHART, Commissioner of the  Social Security Administration,<br><br>　　　　Defendant. | CASE NO.   C05-5801FDB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for September 15, 2006 |

Plaintiff, Romond Watson, brings this action under 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying his applications for Disability Income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33, 1381-83.  This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976).  The parties have fully briefed the issues, and, after reviewing the record, the undersigned recommends affirming the Commissioner's decision.

<u>FACTUAL AND PROCEDURAL  BACKGROUND</u>

Romond Watson was born in 1974 and was 30 years old at the time of the administrative hearing.  He graduated from High School and attended one year of college.  He served in the U.S. Navy from June 11, 1996 until July 29, 1998, and he served a tour of duty in the Gulf War during that time.   He has past work experience as a deck seaman, firewatch, utility worker and cook.

The record reflects Mr. Watson was discharged from the Navy due to problems adjusting to that environment.  Apparently, Mr. Waston began drinking heavily while in the Navy and he was involved in

1   some physical altercations with others within a month of his enlistment. Plaintiff reported that "the Navy
2   mustered him out because there was too much drinking and trouble adjusting and problems with fighting"
3   (Tr. 220-221). After being discharged, Mr. Watson went to the Veterans Administration ("VA") and a
4   physician there diagnosed depression. Mr. Watson continued to abuse alcohol and was violent toward
5   others after his discharge from the Navy. He has since been to jail on three different occasions and he has
6   been required to attend domestic violence classes. He fights with his girlfriend, her brother and cousin. He
7   shares custody of his son with his girlfriend.

8   Mr. Watson filed his application for Disability Insurance Benefits on March 23, 2002, alleging
9   disability since January 13, 2001, due to depression and auditory hallucinations (Tr. 50-52, 59). His
10  application was initially denied on June 28, 2002. (Tr. 24-5) His Request for Reconsideration was denied
11  on October 3, 2002, (Tr. 26-7), and his case was heard on February 24, 2005, by an Administrative Law
12  Judge ("ALJ")(Tr. 390-405). The ALJ issued the decision denying benefits on April 27, 2005. (Tr. 11-23).
13  Mr. Watson filed his a request for Review of Hearing Decision, and on November 4, 2005, the Appeals
14  Council affirmed the decision of the ALJ.

15  Mr. Watson timely filed the instant complaint for judicial review. Plaintiff develops the following
16  arguments in his Opening Brief: (i) the ALJ failed to analyze his claim according to *McCartey v.*
17  *Massanari*, 298 F.3d 1072 (9th Cir. 2002); (ii) the ALJ incorrectly determined that substance abuse was a
18  material factor contributing to Mr. Watson's mental impairments; (iii) the ALJ improperly determined that
19  Mr. Watson's back pain was not a severe impairment; (iv) the ALJ improperly discounted the opinion of
20  the treating physicians; (v) the ALJ did not comply with Social Security Rulings 95-5p and 96-8p in
21  determining his residual functional capacity; and (vi) the ALJ improperly discounted lay witness statements.
22  In response to plaintiff's arguments and claims, defendant effectively argues Mr. Watson was properly
23  denied social security benefits because the ALJ found he was not disabled absent the effects of his alcohol
24  addiction.   The court finds the ALJ's decision is properly supported by the evidence in the record and the
25  court should affirm the administrative decision.

26  ## DISCUSSION

27  This Court must uphold the Secretary's determination if the Secretary applied the proper legal
28  standard and there is substantial evidence in the record as a whole to support the decision. *See* 42 U.S.C.

§ 405(g); *see also* Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla, but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

The burden of proof rests upon plaintiff to establish his or her entitlement to disability benefits. Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). To meet his burden, plaintiff must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to..... last for a continuous period of not less than 12 months. . . ." 42 U.S.C.A. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* Matthews, 10 F.3d at 680.

I. **THE ALJ PROPERLY ASSESSED THE MEDICAL RECORD AND THE MATERIALITY OF PLAINTIFF'S ABUSE OF ALCOHOL**

On March 29, 1996, Congress enacted the "Contract with America Advancement Act of 1996," which amends various portions of the Social Security Act. Pub.L. No. 104-121, 110 Stat. 847 (1996). Section 105(a)(1)(C) of the amendments, titled "Denial of Disability Benefits to Drug Addicts and Alcoholics," provides:

> An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

110 Stat. at 852 (1996) (amending 42 U.S.C. § 423(d)(2)). In determining whether a claimant's alcoholism or drug addiction is material under 42 U.S.C. § 423(d)(2)(C), the test is "whether an individual would still be found disabled if she stopped using alcohol or drugs." 20 C.F.R. § 404.1535(b)(1); Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir.1998). Materiality, however, only becomes an issue after the individual proves that he cannot perform any substantial gainful activity considering all his impairments including drugs and alcohol. Therefore, the ALJ first determines whether plaintiffs impairments, including his or her use of illicit drugs and/or alcohol, are disabling, and then determines whether plaintiffs impairments, absent the effects of drugs and alcohol, are disabling. Plaintiff has the burden of proving his alcoholism or drug

REPORT AND RECOMMENDATION
Page - 3

1  abuse is not material to the finding of disability. *See* Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001);
2  Brown v. Apfel, 192 F.3d 492, 497-99 (5th Cir. 1999); Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.
3  2000).

4        Here, defendant concedes Mr. Watson is unable to perform any substantial gainful activity
5  considering his use of alcohol. Summarizing the medical evidence related to Mr. Watson's impairments,
6  the ALJ concluded:

> I do not find that the claimant has a severe physical impairment. While he has sought treatment for back pain, there are few findings of any back impairment. The claimant did not mention pain in his testimony. I note Dr. Schore's findings that the claimant did not have a lumbar strain and that his thoracic strain was only mild. I give this opinion significant weight and conclude that the claimant does not have a severe physical impairment.
>
> I find that the claimant's alcoholism meets the requirements of listing 12.09. The evidence shows that the claimant has a significant lack of motivation with severe isolation. He has a tendency toward violence when he is under the influence of alcohol and his psychotic symptoms could also be related to his drinking. The claimant has alcoholism which causes him symptoms of an affective disorder with anhedonia, weight loss, hallucinations and suicidal ideation. His impairments cause him marked limitations in social functioning as noted by his isolation and his violence and marked limitations in persistence, as noted by his tendency to fail to show up to classes and his lack of follow through with treatment.

15 (Tr. 20-21). However, the ALJ went on to find that absent the effects of drugs and alcohol, Mr. Watson's
16 impairments were not disabling (Tr. 21-22). The ALJ explained (i) that Mr. Watson's abuse of alcohol
17 necessarily undermines his credibility regarding his use of the substance and thus, the ALJ did not find any
18 significant period of sobriety to judge the matter, (ii) the VA finding of disability is not persuasive because
19 the VA does not attempt to separate out or determine the impact of Mr. Watson's abuse of alcohol, and
20 (iii) the State Agency physicians and Dr. Bloomgarden agree that Mr. Watson does not suffer from any
21 severe impairments, not considering Plaintiff's substance addiction disorder. The ALJ therefore concluded
22 Mr. Watson, absent his alcoholism, did not have any severe impairments and was not disabled.

23       The court has carefully considered the record in light of plaintiff's arguments, and it concludes the
24 ALJ's decision is properly supported by substantial evidence in the record and free of any legal error. In
25 cases where medical evidence may be interpreted in two different manners, the ALJ is entitled to resolve
26 conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). The ALJ may
27 not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672
28 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the

REPORT AND RECOMMENDATION
Page - 4

Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, the ALJ properly relied on the medical opinions of Dr. Bloomgarden and the state Agency physicians to support his findings. As discussed below, disability findings made by the physicians and evaluators related to Mr. Watson's disability finding by the VA, were properly discounted by the ALJ in this matter. The ALJ's evaluation of the medical evidence is properly supported by substantial evidence and free of any legal error.

## II. THE ALJ PROPERLY ANALYZED THE MATTER ACCORDING TO *McCARTEY V. MASSANARI*

Plaintiff argues the ALJ did not follow the Ninth Circuit's decision in McCartey v. Massanari, 298 F.3d 1072 (9th Cir. 2002). In that case the Ninth Circuit ruled as follows:

> We agree with all of the other circuits that have considered the question and hold that although a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision. The important question here is how much weight an ALJ must give the VA determination. The circuits have employed differing standards. *Compare, e.g., Kane*, 776 F.2d at 1135 ("substantial weight") with *Brady*, 724 F.2d at 921 ("great weight") and *Hankerson*, 636 F.2d at 897 ("some weight").
>
> We agree with the approach of the Fourth, Fifth, and Eleventh Circuits and hold that in an SSD case an ALJ must ordinarily give great weight to a VA determination of disability. *See Chambliss*, 269 F.3d at 522, Brady, 724 F.2d at 921; *DeLoatche*, 715 F.2d at 150 n. 1. We so conclude because of the marked similarity between these two federal disability programs. Both programs serve the same governmental purpose-providing benefits to those unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. *Compare* 38 C.F.R. § 4.1 et seq. (VA ratings) with 20 C.F.R. § 404.1 et seq (Social Security Disability). Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework. Because the VA and SSA criteria for determining

> disability are not identical, however, the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record. *See Chambliss*, 269 F.3d at 522 (ALJ need not give great weight to a VA rating if he "adequately explain[s] the valid reasons for not doing so").

McCartey, 298 F.3d at 1075-1076.

Here, Plaintiff's mental condition was evaluated by the Veterans Administration on several occasions, ultimately resulting in 100% service-connected disability benefits. On review of the record the court notes that one of the earliest dated records on file is a report dated November 24, 1999, by Samuel L. Schwartz, a social worker at the VA's Puget Sound Health Care System. Mr. Schwartz wrote that Mr. Watson was there seeking a mental health assessment to receive counseling, and vocational training to return to work. The report concludes, "He has a history of alcohol abuse, and minimizes its impact on his life at this time. He was terminated one week ago from work and is currently motivated to return to work that he can perform. He is motivated by financial concerns." (Tr. 187).

In December 1999, the VA evaluated Plaintiff's impairments, including depression, injury to his right finger, and his back injury. Raising his depressive disorder to 70% disabling, from 10%, the evaluator wrote, "He becomes irritated and angry easily. He has had difficulty finding and holding jobs. He keeps to himself, does not have friends and doesn't talk a lot to his in-laws or his girlfriend. He drinks alcohol and does get drunk." (Tr. 93-94). Plaintiff's finger injury was found 0% disabling, and his back injury was increased from 0% disabling to 10%.

On November 20, 2000, based on an application for increased evaluation, the VA reconsidered Mr. Watson's impairments. The only difference in ratings from the previous rating was a denial of a disability related to Mr. Watson's back strain. (Tr. 83). The court also notes that the evaluator reported, "Since there is a likelihood of improvement, the assigned evaluation is not considered permanent and is subject to a future review examination. In the letters from Mr. Watson he states that he hears voices that tell him to do things and that he sees things. He also states that he has not been eating well and has been drinking lots of beer." (Tr. 84). Mr. Watson's diagnosis was "major depressive disorder with suicidal ideation and alcohol dependency ongoing." (Tr. 85). On March 1, 2002, the VA again evaluated Mr. Watson's impairments. At that time, the VA rated Plaintiff's mental impairments as 100% disabling, effective August 23, 2000. Plaintiff argues the ALJ failed to properly consider the VA ratings of disability.

The court is not persuaded by Plaintiff's arguments. The ALJ properly considered the VA ratings

REPORT AND RECOMMENDATION
Page - 6

1 and addressed the concerns raised in <u>McCartey v. Massanari</u>, *supra*.  The ALJ wrote:

2
3
4
5
6
> While there are multiple opinions in the record that the claimant is disabled, they do not address the claimant's drinking.  The findings of the Veteran's Administration should be given significant weight according to in <u>McCartey v. Massanari</u>, 298 F.3d 1072 (9th Cir. 2002)).  However, the VA decision did not address the issue of the claimant's alcoholism.  The claimant could certainly argue that his alcoholism is service connected, as he did not begin drinking until he was in the Navy, so it is appropriate for the VA to consider the claimant's limitations with his alcoholism.  As the VA has not determined the impact of alcoholism on the claimant's disability, the decision that the claimant is disable cannot be given significant weight.

7 Tr. 22.

8    The ALJ's reason for not adopting the VA's finding of disability is persuasive, specific and valid,
9 and it boils down to the simple fact that the VA's determination process regarding the abuse of alcohol is
10 significantly different from the Social Security Administration's process, discussed above.  The VA did not
11 attempt to separate out Mr. Watson's abuse of alcohol.  As noted above, the VA's early assessments
12 specifically incorporated his use of alcohol, and his use of alcohol was "service connected."  The ALJ was
13 required to determine the materiality of Mr. Watson's alcohol abuse to his disability as discussed above.
14 The ALJ properly did not rely on VA disability determinations in this case.

15 **III.    THE ALJ PROPERLY DETERMINED PLAINTIFF'S SEVERE IMPAIRMENTS**

16    Step-two of the administration's evaluation process requires the ALJ to determine whether an
17 impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996).  An impairment is "not
18 severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a),
19 416.921(a).  The  Social Security Regulations and Rulings, as well as case law applying them, discuss the
20 step-two severity determination in terms of what is "not severe."  According to the Commissioner's
21 regulations, "an impairment is not severe if it  does not significantly limit [the claimant's] physical ability to
22 do basic work  activities,"   20 C.F.R. §§ 404.1520(c),   404.1521(a)(1991).  Basic work activities are
23 "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting,
24 pushing, pulling, reaching,  carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85-
25 28 ("SSR 85-28").  An impairment or combination of impairments can be found "not severe" **only** if the
26 evidence establishes a slight abnormality that  has "no more than a minimal effect on an individuals ability
27 to work."  *See* SSR  85-28; <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir. 1998) (adopting SSR
28 85-28)(emphasis added).

REPORT AND RECOMMENDATION
Page - 7

1  Plaintiff argues the ALJ should have considered Plaintiff's back pain a severe impairment. As
2  discussed above, the ALJ did not find any severe impairments, excluding Mr. Watson's abuse of alcohol.
3  The ALJ reviewed the evidence regarding Mr. Watson's back pain, noting on December 10, 2003, Plaintiff
4  denied any pain (Tr. 20). As quoted above, the ALJ specifically relied on Dr. Schore's evaluation, which
5  supported no impairments from a lumbar strain and only a mild impairment related to a thoracic strain. Dr.
6  Schore's evaluation, when taken into account along with claimant's denial of any pain during an evaluation
7  at the VA (Tr. 339), properly support the ALJ's finding that back pain did not present any "severe
8  impairment."

### IV. Consideration Of Lay Witnesses Statements

The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ can reject the testimony of lay witnesses only if s/he gives reasons germane to each witness whose testimony s/he rejects. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996) <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ need not address evidence in her decision if it is not probative. <u>Vincent ex. rel. Vincent v. Heckler</u>, 739 F.3d 1393, 1395 (9th Cir. 1984). Testimony from lay witnesses is of "particular value" when the witness sees the claimant every day. <u>Smolen</u>, 80 F.3d at 1289.

Here, the ALJ addressed the lay witness statements of Latoya Humphries, plaintiff's girlfriend and the mother of his son, who testified at the administrative hearing. Ms. Humphries believes Plaintiff is depressed all the time and on her days off from work she observes Mr. Watson normally stays up late at night until 4 a.m. and will not get out of bed until after noon. She does not believe he has been drinking for the past year (the hearing was conducted February 24, 2005), and she takes him to AA meetings twice a week. Tr. 401-404.     With respect to Ms. Humphries' statements, the ALJ accurately recounted, "His girlfriend testified that she had known the claimant for seven years. He is up at nights and he just sits around depressed. He did not shower daily and she has to ask him. He does not really help with their child. She said that he has not drunk for a year. She took him to AA meetings." Tr. 20.

The ALJ found no reliability in Plaintiff's claim that he had not been abusing alcohol in the recent past. In this context he addressed Ms. Humphries statements, explaining, "The only corroboration of his testimony is his girlfriend, who is not a tenable witness, as she testified in his presence, subject to implicit

REPORT AND RECOMMENDATION
Page - 8

coertion [sic], and she has a monetary interest in the furtherance of his claim." Tr. 22.

The ALJ analysis of the medical evidence and plaintiff's alcohol abuse is discussed above. Significantly, the ALJ found evidence that Mr. Watson had used alcohol in 2004, evidenced by the fact that he was convicted for domestic violence occurring in 2004, which in the ALJ's analysis of the case, was indicative of his history of abuse of alcohol during violent behaviors.  The court does not find any error in the ALJ's reasoning or evaluation of the lay witness statements in the context of this case.

## CONCLUSION

Based on a careful review of the record, the undersigned concludes the ALJ did not erred in his consideration of plaintiff's applications for social security benefits.   Accordingly, the Court should affirm the administrative decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **March 11, 2005**, as noted in the caption.

DATED this 24th day of August, 2006.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge